UNITED STATES *v.* R. GAERTNER & CO., INC., ET AL.

**No. 5727.**—Invoices dated Nuremberg, Germany, March 7, 1938, etc.
Certified March 9, 1938, etc.
Entered at New York, N. Y., March 31, 1938, etc.
Entry No. 835100, etc.

Third Division, Appellate Term

(Decided October 7, 1942)

*Paul P. Rao,* Assistant Attorney General (*Samuel D. Spector,* special attorney), for the appellant.

*Strauss & Hedges* (*Barnes, Richardson & Colburn* by *J. Bradley Colburn* of counsel) for the appellees.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is an application for review of the decision of the trial judge in *R. Gaertner & Co., Inc., et al.* v. *United States,*

Reap. Dec. 5445, which relates to the value of ceramic prints or decalcomanias imported from Germany during the years 1936, 1937, 1938, and 1939. Five hundred and fourteen cases were consolidated for trial. With the exception of the entries covered by reappraisements 125252–A, 128740–A, and 127383–A, all of the merchandise was entered under duress at prices advanced to equal advances made by the appraiser in test cases pending reappraisement. Reappraisement 127383–A covers but one item which was advanced by the appraiser, the remainder of the items in issue having been entered at advanced prices under duress.

The issue involved hinges upon the question of whether the imported decalcomanias, which are of the type known as "duplex," are similar to decalcomanias used in Germany which are a kind known as "simplex." The trial judge found that the imported articles were not similar to those sold and used in Germany and appraised them on the basis of export value rather than on the basis of foreign value of the simplex decalcomanias as returned by the appraiser.

The trial judge has carefully summarized the evidence presented at the trials on April 30, 1941, May 1, 1941, and May 21, 1941, and also the evidence in the record in reappraisement 124452–A, etc., (*Decal Products Co. et al.* v. *United States*, Reap. Dec. 4748, affirmed in *United States* v. *Decal Products Co. et al.*, Reap. Dec. 5017), the record in which case was incorporated and made a part of the record in this case. We have carefully examined these records and deem it unnecessary again to review such evidence.

The cases herein involved were first called for trial on February 27, 1941, at which time counsel for the importers moved to consolidate all of the cases for trial, but counsel for the Government objected to that procedure, which objection was sustained by the trial judge. There appeared to be four different groups of cases, consisting of merchandise imported by four different importers and counsel for the importers made four separate records, namely reappraisements 125252–A, etc., of R. Gaertner & Co., Inc.; reappraisements 125353–A, etc., of Decal Products Co.; reappraisements 126083–A, etc., of Palm Fechteler & Co., Inc.; and reappraisements 129947–A, etc., of Commercial Decal Products, Inc. The appeals of each separate importer were consolidated with the respective initial suits above enumerated.

Counsel for the importers moved to incorporate in the record in each of the above cases the record in *United States* v. *Decal Products Co. et al.*, Reap. Dec. 5017, *supra*, and voluntarily produced for cross-examination two witnesses who testified for the importers in that case; namely, Mr. Alfred Duhrssen and Mr. Albert Pickin, and explained that Mr. James J. Dugan, who testified in behalf of R. Gaertner & Co. in the record sought to be incorporated, had died since

the testimony was taken in that case. The trial court ordered the record in the cited case incorporated into the record in each of the four cases. Mr. Duhrssen was cross-examined by the Government counsel in connection with the group of cases having initial number 125353–A and Mr. Pickin was cross-examined in connection with the group of cases having initial number 126083–A.

Mr. Duhrssen testified on cross-examination that he purchased the decalcomanias covered by the entries made by Decal Products Co. from several companies in Europe; that he was not the exclusive purchaser from any of them; that Wunderlich & Co. sell to anybody in the United States; that when he sold his merchandise in the United States he exhibited a design in the form of a small proof which was a finished decalcomania but smaller than the finished sheet eventually delivered; that when he received an order he sent it to Germany; that he had offered decalcomanias to every pottery manufacturer of any consequence in the United States; that there is a difference in use by different potteries in the United States, depending on how fine a product is made, but they all use duplex decalcomanias with English paper; that most decalcomanias are fired at 1,360° to 1,380°, F.; that he sells the same type of decalcomanias to all types of customers; that he is not familiar with all firing points or temperatures but he sells a product which is made to fire at 1,380° and he knows that most of his customers use that temperature; that the same type of decalcomania usable by a person firing at 1,450° would not be suitable to a person firing at 1,200°; that the firing points make a difference because some colors have more flux than others; that when he buys from Germany the quantity is one factor in the price and the numbers of colors in the decalcomania is another.

On redirect-examination the witness testified that the German sellers place no restriction on him as to the person to whom he sells or the resale price and that there was no contract with the seller by which the sales were restricted to him; that the usual wholesale quantity for export is 2,000 sheets. When asked how that quantity was determined, he said:

It is an economical quantity to print. It is about a half-day's run on the press. No manufacturer wants to run his press for less than a half-day. That is how they arrive at that quantity.

The witness testified further that if he bought less the price would be higher, and, if he bought more the price would be lower; that about 75 per centum of his orders during the years 1936, 1937, 1938, and 1939 were for 2,000 sheets; that he paid the prices shown on the invoices in this case; that the decalcomanias will fade if they are fired at too high a temperature and if they were subjected to a degree of heat necessary to fire a simplex decalcomania they would not be usable.

On further cross-examination by counsel for the Government, the witness testified that simplex decalcomanias are fired at a high temperature and that the colors used in the decalcomanias sold in the German market have very little flux in them while the colors in those used in the United States have a considerable portion of flux; that there is a difference between the decalcomanias sold in the United States and those sold in Germany in paper and colors; that his customers in the United States would not accept the simplex type of decalcomania.

Mr. Albert Pickin, who was called for cross-examination in reappraisements 126083–A, etc., of Palm Fechteler & Co., Inc., testified that the decalcomanias imported by that firm were purchased from two mills in Germany, namely, Ferdinand Foll and Dietz, Beieri & Co.; that the mills sent him original sketches and paintings after which he sent the sketches to Germany to be fired and each sketch was made into a proof from which he sold the decalcomanias; that he bought approximately the same amount he sold, and, if a customer wanted a particular style, he bought that style; that he offered decalcomanias to 90 per centum of the potteries in the United States; that the 10 per centum to whom he made no sales did not have good credit; that he gave the customer the proofs, and, if they fired correctly in their ovens, they bought; that the prices are determined on the basis of colors and quantity; that 99⅔ per centum of his customers are earthenware manufacturers and that is 95 per centum of the industry, the other 5 per centum being porcelain and chinaware manufacturers.

On redirect examination the witness testified that the prices set forth on the invoices in the cases herein involved represented his payments for the merchandise and that there were no additional payments made; that there were no restrictions made between him and the German manufacturers; that the major portion of his orders were in lots of 2,000 sheets; that there were some purchases in larger lots and some in lots less than 2,000 sheets but approximately 50 per centum of his purchases were in lots of 2,000 sheets.

Counsel for the importers then announced that he would rest on the record as made, which included the incorporated record in reappraisement 124452–A, etc., and counsel for the Government moved for a continuance of 4 months to which counsel for the importers objected. The judge presiding at the trial continued all of the cases until the April term peremptorily. On April 30 the trial was resumed and all of the cases in the four records previously described herein were, by consent, consolidated for trial. The hearing was not completed on April 30 and was continued until the following day, May 1. Counsel for the Government introduced the testimony of 14 witnesses, and, upon a showing that one further witness, who had been subpoenaed by the Government, was sick, the case was continued until the May term solely for the purpose of taking the testimony of that

witness. When the trial was resumed on May 21, 1941, that witness appeared and testified at some length. The Government produced also another witness, Mr. Horace A. Browne, who is a Government agent who made an investigation on the subject in Germany, but, on objection by counsel for the importers, the court ruled that inasmuch as the case had been continued solely for the taking of the testimony of Mr. Tatler, the witness who was sick at the previous hearing, the testimony of Mr. Browne was inadmissible.

Counsel for the Government offered also five reports of Government agents and, over objection by counsel for the importers, three of them were received and marked exhibits 27, 28, and 29. Counsel for the importers then offered the testimony of four witnesses in rebuttal, after which counsel for the Government offered the two reports which had previously been rejected and stated that he offered them to rebut the statements of one of the witnesses called by the importers on rebuttal. He also called Mr. Browne who wrote those reports. Upon objection by counsel for the importers, the trial judge, after reading from the record showing that the purpose for which the case was continued to the May term was solely for taking the testimony of Mr. Tatler for the Government, revised his ruling on the admission of exhibits 27, 28, and 29 and held that all of the reports were inadmissible. In making this ruling, the court said:

The court admitted some of these special agents' reports, but it is going to change its ruling and refuse to admit any of them for the reason that there is no excuse for not putting them in at the last hearing so that the importers' attorneys could have the right to rebut them at this time.

Exception was taken by counsel for the Government and the reports were marked exhibits 27, 28, 29, 30, and 31, for identification.

The weight of evidence shows that the merchandise covered by the importations herein involved consists of decalcomanias of the type known as "duplex." These were made of two sheets of British manufactured paper attached together by an adhesive, one being a heavy white paper and the other thin and transparent. The thin sheets contain figures printed thereon in ceramic colors which are designed to be transferred to earthenware for purposes of decoration. Some of the colors used in the printing were produced in England while others were produced in Germany and the colors contain an average of 10 per centum of flux, which is used in the colors to insure good results when the figures are attached to pottery such as earthenware which is fired at lower temperatures than chinaware. This type of decalcomania is not used in Germany and the importers claim that the articles should be appraised on the basis of export value.

The evidence shows further that each sheet of the simplex decalcomania consists of one heavy sheet of German-made white paper, called "meta" paper, upon which the designs in ceramic colors made

in Germany are printed. This type of decalcomania is used in Germany for the purpose of decorating pottery fired at high temperatures and the colors contain practically no flux.

The United States appraiser considered that the imported duplex decalcomanias were similar, for appraisement purposes, to the German simplex decalcomanias, and, on the basis of section 402 (a) (1) of the Tariff Act of 1930, which provides that the value of imported merchandise shall be "the foreign value or the export value, whichever is higher," the goods were appraised at the foreign values of simplex decalcomanias, those values being higher than the export values of the duplex decalcomanias.

The trial court found that the imported duplex decalcomanias covered by these appeals are not similar to the simplex which were freely offered for sale and used in Germany. In showing the differences in the two types, the court below used the following language:

In both types of decalcomanias under discussion here the initial materials are the same, to wit, paper and colors, but it is fairly established of record, in my opinion, that each of said materials used in the two articles is specially manufactured for the particular type in which they are used, and that the paper and colors used in the simplex type are essentially different from those used in the duplex. In my judgment, it is established by a preponderance of the evidence herein that the specially German manufactured simplex or meta paper and the hard colors used in the simplex type make such type particularly adaptable for use under manufacturing conditions as they prevail in the foreign market; and that the English manufactured duplex paper and soft colors are used in the duplex type to meet the requirements of the pottery industry of this country for which such duplex decalcomanias are exclusively manufactured.

Counsel for the appellant argues that, under the rule announced in *United States* v. *Thomas & Co.*, 21 C. C. P. A. (Customs) 254, T. D. 46788, the trial court in this case should have found that the imported duplex decalcomanias were similar to the simplex decalcomanias sold and used in Germany and should have appraised the merchandise at the value of the simplex decalcomanias. The merchandise in that case consisted of paper tubes and bobbins used to hold yarn during the spinning, twisting, and warping processes in the textile industry. The merchandise was appraised on the basis of United States value on the theory that tubes and bobbins having the same corrugations and taper as the imported articles were not used in the country from which the goods were imported because different mills required different taper and corrugations to fit their machines. However, the method of production of the articles for the different mills was the same. Some mills produced both types and the costs of producing the two were the same. The trial court held that the two types of articles were similar and appraised the imported products at the values of the similar products used in the foreign country.

In approving this finding of the trial court on the subject of similarity of the two products, the appellate court succinctly reviewed the principles announced in a number of previous decisions on the question of appraising goods at the value of similar merchandise and quoted pertinent parts of those decisions. A comparison of the facts in this case with the statements in those decisions is enlightening for the purpose of determining the issue herein.

The weight of evidence in the instant case shows that the articles in question differ from the simplex decalcomanias in that they are not "made of approximately the same materials," are not "commercially interchangeable" with the product used in Germany, and are not "adapted to substantially the same uses, and are so used, ordinarily" (quoting from *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T. D. 42714); that they are not "capable of the same use and may be substituted therefor" (quoting from *United States* v. *Wecker & Co.*, 16 Ct. Cust. Appls. 220, T. D. 42837) because the earthenware manufacturers who use the imported duplex decalcomanias cannot and will not use the simplex, due to the methods used in producing earthenware; that they are not "made of approximately the same materials" (quoting from *United States* v. *Vietor & Achelis*, 17 C. C. P. A. (Customs) 412, T. D. 43864), because the colored figures in the duplex decalcomanias are printed on thin transparent paper, making them useful in the methods adopted by the American industry, with an additional sheet of white paper attached as a carrier and which is detached from the thin paper before the latter is applied to the earthenware, while the German simplex decalcomanias are printed on one sheet of heavy white paper making them difficult to apply to pottery and difficult to remove the paper after the colored figures are attached to the pottery; that commercially the two products are not identical, which was the condition of the two kinds of rock candy in *Scharf Bros. Co. (Inc.)* v. *United States*, 16 Ct. Cust. Appls. (Customs) 347, T. D. 43089, because the figures in the imported duplex decalcomanias contain soft colors and an average of 10 per centum of flux, making them adaptable for use on earthenware which is fired at low temperatures while the German simplex decalcomanias contain hard colors and very little flux and cannot be satisfactorily used on earthenware; and they are not of the same value, as were the tubes and bobbins in *United States* v. *Thomas, supra*, because there appears to be a considerable difference in value between the export values of the imported duplex decalcomanias, as shown by the entries, and the appraised values of the goods, which were appraised at the foreign values of the German simplex decalcomanias.

The trial court reviewed *United States* v. *Kraft Phenix Cheese Corp.*, 26 C. C. P. A. (Customs) 224, C. A. D. 21, which is a more recent decision on the subject of appraisement by the similarity method.

In that case it was shown that the so-called portion Roquefort cheese sold to the United States and the so-called standard Roquefort cheese sold in France were both derived from the same kind of sheep's milk. The appellate court found that the evidence supported the finding of the appellate division of the Customs Court that the two kinds of Roquefort cheese were not similar, due to the methods used in the manufacture thereof and the different characteristics of the cheese.

Similarity is a question of fact and when the appellate court has found substantial evidence to support a finding of similarity or dissimilarity by the trial court in a reappraisement case, it appears that the decision below on that point has been affirmed. But the question as to similarity depends on the record in each particular case.

We are of opinion that the weight of evidence supports the finding of the court below that the imported duplex decalcomanias are not similar to the German simplex.

Appellant, in assignment of error No. 6, raises the question as to the legality of the trial court's finding that 2,000 sheets of decalcomanias were the usual wholesale quantities. We are of opinion that there is no merit in this assignment of error. Witnesses Duhrssen and Pickin testified, when they were called for cross-examination in reappraisements 125353–A and 126083–A, respectively, that 2,000 sheets were the usual wholesale quantity for export and Mr. Duhrssen gave his reasons, quoted above, why such a quantity was usually selected. Furthermore, the three affiants whose testimony is in the record in the form of affidavits and admitted as exhibits A–1, A–2, and A–3 in reappraisement 124453–A, the record in which case was incorporated in the present record, stated that 2,000 sheets were the customary wholesale quantity.

Appellant raises certain questions as to the legality of the rulings of the trial court on the admission of evidence. Assignments of errors 11 and 12 read:

11. In sustaining plaintiffs' objection to the following question, asked of witness Hellman by Government counsel (R. 157):

Q. We are not talking about the rest of the world; we are talking about the United States. Will you give us some of the names of the patterns that were imported into the United States?

to which ruling an exception was duly taken by the Government, and in not overruling the objection.

12. In sustaining the plaintiff's objection to the question (R. 181):

Q. Do you know, from your observation and your knowledge of that, whether this Exhibit 22 for identification is the resultant product of the application of this decalcomania, "Dolly Madison", on the ware in Germany?

to which ruling an exception was duly taken by the Government, and in not overruling the objection.

An examination of the record shows that exception was not taken by the Government attorney to the court's ruling on the objection to

the question in assignment of error No. 11 and that no offer of proof was made by counsel for the Government after the ruling on either question. We are of opinion that the alleged errors covered by assignments of errors Nos. 11 and 12 have no merit. In the case of *Meyer & Lange* v. *United States*, 12 Ct. Cust. Appls. 15, 18, T. D. 39892, the court said:

An ordinary rule of practice in putting in testimony is, that a question addressed to a party's own witness, if objected to, must be followed by an offer of what is expected to be proved by the answer of the witness, if it is desired to complain of the exclusion of the question, when the purpose of a question is not apparent and it does not indicate whether the answer of the witness would be material, or relevant, or competent (38 Cyc. p. 1329).

We are of opinion that there is no merit in the following assignments of errors relating to the admission of evidence:

19. In overruling the Government's objection to the following question (R. 247):

Q. Of your customers during this period what proportion of them manufactured earthenware?

to which ruling an exception was duly taken by the Government, and in not sustaining the objection.

20. In overruling the Government's objection to the following question (R. 265):

Q. Mr. Duhrssen, at our request did you compile figures of the number of sheets and the number of pounds of decalcomanias imported for consumption from Germany for the years 1936, 1937, 1938 and 1939, for the Decal Products Company?

to which ruling an exception was duly taken by the Government, and in not sustaining the objection.

In assignments of errors 13, 14, 15, and 16, the appellant claims that the trial court erred in rejecting as evidence the reports of Treasury attaché Erwin G. May, Treasury representative Walter M. Wolfe, and Treasury representative Horace A. Browne at the trial on May 21, 1941, which was the date to which the case was continued solely for taking the testimony of Mr. Tatler. The trial judge ruled, as heretofore stated in this decision, that, inasmuch as the case was continued solely for taking the testimony of Mr. Tatler, all other evidence which was in the possession of counsel for the Government during the previous hearing was inadmissible. It appears from the record that Mr. Browne was in court during the previous hearing but was not called as a witness. The record made on May 1, 1941, contains the order of the court as to the scope of the testimony to be introduced at the adjourned hearing on May 21, 1941. It contains the following:

Mr. COLBURN. If the court please, I do not wish to be understood as placing an undue hardship on the Government, but I do wish it to be clearly understood that the continuance of this case is being made at the request of the Government and if it is continued until May 21st it is for the sole purpose of taking the testimony of this witness who is missing today.

Judge KINCHELOE. Absolutely, and for that reason only.

Mr. Colburn. And upon the conclusion of his testimony we will proceed with our rebuttal and the case then submitted.

Judge Kincheloe. You understand, Mr. Spector, that this case is being continued solely for that purpose, for the testimony of this witness that you can't produce today.

Mr. Spector. Suppose this man comes in and talks about some matter and I have to have another witness to connect up something that he brings in.

Judge Kincheloe. The only reason this case is being continued is because you have shown due diligence to try your case, and that the cause, or the reason why you can't go ahead now is due to something beyond your control.

Mr. Spector. I ask that I not be limited to this one witness. I haven't seen the man, and he might talk about something that will require me get another witness for additional evidence, and I think I should have the right to get it.

Judge Kincheloe. The case will be continued to May 21st, and you will have to confine it to this testimony you can't get here today.

In support of his contention that the trial court erred in rejecting this evidence, counsel for the appellant quotes the following excerpt from Corpus Juris, Vol. 64, p. 146, paragraph 170, b.

Order of introduction of Individual Items of Proof. As one cannot prove his whole case at the same moment, of necessity a party is obliged to offer his evidence progressively; and, subject to the limitations that in order to be admissible as a matter of strict right, evidence must be admissible at the time it is offered; and that a party must introduce all his evidence in support of his case or defense before resting, unless the court, as it may do, relaxes the strict operation of the rule in the interests of justice, a party may, as a general rule, introduce the various items of evidence which go to establish his case or defense, in whatever order he pleases, and the court will not control his choice in this regard; and it has been said that in those cases which depend on more than one fact it cannot be a matter of much importance at which end of the testimony the proof is commenced. The evidence must appear to be pertinent to the controversy or be accompanied by an offer to show its relevancy in the progress of the cause. It has been held in some jurisdictions that such a right is not subject to direction by the court where the evidence is relevant and competent when offered, and provided the party connects it and renders it material to the issue, while others hold that the exercise of the right is within the discretion of the court.

Counsel for the appellant claims further that he should have been permitted to introduce the reports, exhibits 30 and 31, for identification, and the testimony of Mr. Browne on surrebuttal. The following appears in the same volume of Corpus Juris, page 157, paragraph 178, c:

Reply or Surrebuttal. Ordinarily, the rebutting evidence offered by him upon whom the burden of proof rests concludes the introduction of evidence, but not always, and for good reasons, in the furtherance of justice, the court may, in its discretion, allow evidence in reply to that called forth by the rebuttal testimony. When plaintiff in rebuttal is permitted to introduce new matter, defendant should be permitted to introduce evidence in surrebuttal, and to decline to permit him to do so is error, especially where the evidence offered in surrebuttal is for the first time made competent by the evidence introduced by the plaintiff in rebuttal; but defendant should ask for the right to meet the new matter. On the other hand, if the evidence sought to be introduced in surrebuttal could or should have been introduced at an earlier stage, its admission or rejection is a matter

for the discretion of the trial court, as where the evidence is cumulative, or where there is no sufficient excuse for not introducing the evidence in chief at the proper time.

It is our opinion that the rulings of the court on the admission of the special agent's reports and the testimony of Mr. Browne were legal. Under the circumstances of this case, the order in which the evidence was to be introduced at the last hearing was a matter for the sound judicial discretion of the court. As to the contention of appellant that the trial judge erred in refusing to permit the introduction of the reports marked exhibits 30 and 31, for identification, and the testimony of Mr. Browne on surrebuttal, we are of opinion that no error is apparent. A review of the testimony of the importers' witnesses on rebuttal shows that the evidence introduced merely contradicted some of the statements of the Government witnesses introduced in defense and that it does not contain any new matter which is subject to surrebuttal.

Counsel for the appellant strenuously urges, in support of paragraphs 9 and 10 of his assignment of error, that the trial court erred in incorporating into the record in this case the complete record in reappraisement 124452–A, etc., which was the test case decided in *Decal Products Co. et al.* v. *United States, supra.* His objection was made in substantially the same form in each of the four groups of cases when they were called for trial on February 27, 1941. In order to show the scope of this objection, we quote from the record in reappraisement 125252–A, etc., as follows:

Mr. COLBURN. * * *. I now move the admission in evidence of the record in Reappraisement Decision 4748, of March 4, 1940, affirmed in Reappraisement Decision 5107.

Mr. SPECTOR. I have no objection to the incorporation of part of that record, but I object and ask to be relieved of the stipulation made in that record at the opening of the trial.

. We made that stipulation at that time for the purpose of trying out a certain phase of the litigation on a question of similarity. That question has been decided adversely to the Government. We are now going to try this case as a test case in its various positions.

We made a stipulation in that case limiting it only to that particular trial. That stipulation was only relevant to that trial. We ask to be released of every phase of that stipulation, and if we are relieved of that stipulation we have no objection to the incorporation of the rest of the record, so as to facilitate matters.

Judge KINCHELOE. I understood the Government to concede the instant merchandise and that tried in the test case were commercially similar.

Mr. SPECTOR. Yes, but being a nice fellow I got in trouble, and I am going to get out of this trouble. Because I was a nice fellow and stipulated with Barnes to eliminate a great deal of his proof, I was therefore repaid by his refusal of a continuance. Somebody in Washington criticized me for making that stipulation, and said we were going back for a new trial so we would be relieved of this stipulation. I think to have a right to be relieved, because a stipulation of fact in any particular case, pertaining only to that particular case, doesn't carry over.

Judge KINCHELOE. If you are going to try it on another issue——

Mr. SPECTOR. There is no export value on this merchandise.

Mr. COLBURN. We, of course, object to that. I don't know what Mr. Spector means when he says he was a good fellow and agreed to something. That was a mutual stipulation on a complete and thorough understanding of counsel at that time that this entire issue rested upon the similarity of the two involved types of merchandise. There was no suggestion, no thought communicated to our side of this case that the Government had any other thought. The stipulation was freely and openly arrived at after full and complete consideration by both sides. It is a necessary and component part of the entire litigation.

Mr. SPECTOR. I don't think this court has the authority to compel a stipulation, to hold it over to another trial.

Judge KINCHELOE. In view of the fact that this merchandise is the same, the court sustains the motion and will let the whole record be incorporated in this record.

Mr. SPECTOR. Exception.

I now move to except to the court's ruling on the ground that the trial of the incorporated cases here pertained to a particular issue which was to be determined in that case. In incorporating the entire case at this time, including the stipulation, it deprives the Government of its right to prove that there was no export value. That limits the Government in the trial of every issue involved in a reappraisement case. At this time we except on the ground that the court has no jurisdiction to compel the incorporation of a stipulation which was made only for a particular case, and that it should not be carried over to any particular case.

Judge KINCHELOE. That may be the exception, but that stipulation was freely entered into, and that is as much a part of the record as evidence. No argument. You make your exception.

Mr. SPECTOR. Exception.

In the record in reappraisement 125353–A counsel for the Government explained in greater detail the difficulty he was confronted with in the proof of his case by the inclusion of the stipulation in the incorporated record. The following appears:

Mr. SPECTOR. I want to explain to the court we didn't say we have export value. We said two kinds of merchandise sold, one sold for export to the United States, the other sold for consumption in Germany. If they were similar, the foreign value would prevail. If they were dissimilar, export value would prevail. In other words, to expedite matters, we waived proof of usual wholesale quantity. We waived proof of ordinary course of trade. We waived proof of a free offering in Germany for export to the United States. We waived a free offering of merchandise in Germany for home consumption. We waived all the elements in section 402 except similarity, and if we are prevented in this case from proving all of the requirements of section 402, we are deprived of our day in court. I don't think this court can bind us to a stipulation made in another case.

Judge KINCHELOE. What is your contention? That it is different?

Mr. SPECTOR. I don't want to disclose our defense. We contend there is a foreign value. We contend there is no export value whatsoever. We don't say there is an export value. We say there is no export value. We said there was an export value originally, but the foreign value was higher. We said the foreign value of similar merchandise was higher.

The stipulation which counsel for the Government wished to have eliminated from the record is contained in the following excerpt from the record in reappraisement 124452–A, etc.:

Mr. BARNES. * * *. To the end that the details of proof may be limited and that the issue may be narrowed as much as possible, I offer for the consideration of the Assistant Attorney General the following stipulation of fact:

First, that certain decalcomanias are sold and freely offered for sale to all buyers in the ordinary course of trade in the usual wholesale quantities of 200 sheets in the principal markets of Germany for home consumption in Germany and export therefrom, except to the United States, at prices which are and were at the time of exportation of the certain other decalcomanias covered by the involved appeals to reappraisement the same as the unit appraised values of the decalcomanias covered by these appeals to reappraisement, and which prices constitute the foreign value if this court decides that the foreign value is the proper basis of appraisement for the merchandise at bar.

Second, that certain other decalcomanias not identical with the above, but which are the subject of the importations covered by these appeals to reappraisement are and were at the time of these exportations sold and freely offered for sale in Germany to all purchasers in the ordinary course of trade, in the usual wholesale quantities of 2,000 sheets, in the principal markets of Germany, but only for exportation to the United States at prices which are and were at the time of such exportations the same as the entered values of the decalcomanias involved in these appeals to reappraisement, and which entered values are the export value, if the court decides this merchandise to be dutiable on the basis of export value.

Judge KINCHELOE. Do you agree to that, Mr. Spector?

Mr. SPECTOR. There are two exceptions. The first exception is that we contend that the usual wholesale quantities for foreign value is from 5 to 200 sheets, and if the importer will accept that modification we will consent to the first part of the stipulation. And then the other part we object to is that we want the addition, in connection with foreign value of "and for sales to other countries than the United States." In other words, that certain decalcomanias are sold in Germany and freely offered for sale to all buyers in the ordinary course of trade in the usual wholesale quantities, which are between 5 and 200 sheets, in the principal markets of Germany. for home consumption in Germany or for sale to countries other than the United States at prices which are and were at the time of exportation of certain other decalcomanias covered by the involved appeals to reappraisement.

The balance of the stipulation remains the same. With those two changes I will consent to the stipulation.

Mr. BARNES. I do not yet understand what the Government objects to in this stipulation. Government counsel should keep in mind the fact that these shipments were made not only under the Act of 1938, which amended the Administrative Act of 1930, but also some of them were made prior to that time. In this case, I thought I was covering the government's position by stating what the foreign value would be, and that the values as found by the appraiser would be the correct dutiable values if Your Honor decides that foreign value is the basis of duty. Any other stipulation would be an attempt to stipulate a matter of law, which we have no right to do.

Mr. SPECTOR. In other words, we agree that if the merchandise is similar then the foreign value which is the appraised value will prevail. If the merchandise is found by the court not to be similar then export value or the entered values will prevail. But in defining foreign value we want the stipulation to include sales in Germany as well as sales to other countries than the United States. We want it to read "for home consumption or for sale to countries other than the United States".

Mr. BARNES. That's all right.

Mr. Spector. In other words, the stipulation on foreign value will include sales in Germany and to other countries than the United States.

Mr. Barnes. That's right.

Judge Kincheloe. Do you agree on the usual wholesale quantities?

Mr. Spector. Yes, from 5 to 200.

Mr. Barnes. Well, in order to avoid confusion we can just take that sheet that Mr. Spector has and make corrections on it. But of course, I object to the statement of "5 to 200". It is either 5 or 200. It can't be 5 to 200.

Mr. Spector. All right; we will take 50. The whole question is on similarity.

Counsel for the appellant makes the following argument in his brief:

It is an elementary principle of law that stipulations made at a trial affect only *that* trial and do not apply to any subsequent trials. It could not possibly affect any other trials involving other parties to the suit, except by consent of the parties. Here we express objection to such action.

In the case of *Goodman* v. *New York Ry. Co.*, 150 N. Y. S. 702, 88 Misc. 95, the court held that where parties at a previous trial stipulated the amount of plaintiff's recovery, the stipulation was effective only as to *that* trial and did not limit the damages on a subsequent trial.

In the case of *Brown* v. *Town of Winthrop*, 175 N. E. 50 (Mass.), the court held that a stipulation by an attorney for a town at the first trial, that notice of injury to the town was valid, is not binding on the second trial.

The United States Circuit Court of Appeals, Second Circuit, in the case of *Nachman Spring-Filled Corporation* v. *Spring Products Corporation*, 74 Fed. Rep. 2nd Series, p. 710, at page 712, held that a stipulation entered in another suit between different parties was not binding upon the parties herein. The opinion states:

\* \* \*. This stipulation was not made with or for the benefit of appellee, but another not a party to this suit. Appellant is not estopped by this stipulation. (Authorities cited \* \* \*). This stipulation is immaterial in this suit. (Citation follow \* \* \*). As we have pointed out, the Steiner patents do not anticipate. Moreover, since the parties defendant were not the same, and the case in Maryland was disposed of by an adjustment or settlement, no conclusion may be reached which would in any way estop the appellant.

In the last case above cited by appellant, the parties were not the same. But here the parties *are* the same and the goods are the same or similar, and, with the exception of reappraisements 125353–A, 125355–A, 125575–A, 125577–A, 125584–A, 125585–A, 125587–A, 125910–A, 125911–A, 125912–A, 125915–A, and 125916–A, the issue is the same. In the cases above enumerated the collector filed cross-appeals claiming that the merchandise was appraised at too low a value and in those cross-appeals the burden was on the Government to prove a value higher than that found by the appraiser. In the portion of the record containing the stipulation above quoted, the parties agreed that if the court holds that the merchandise should be appraised on the basis of foreign value, the unit appraised values represent the foreign values. It is apparent that this agreement would tend to restrict the Government from proving that the unit foreign values were higher than the appraised values, as claimed in the collector's cross-appeals. The Government did not attempt to

introduce such evidence but we are of opinion that the trial court erred in including the stipulation in the record incorporated insofar as it affects the 12 cases in which the cross-appeals were filed. As to reappraisements 125353–A, 125355–A, 125575–A, 125577–A, 125584–A, 125585–A, 125587–A, 125910–A, 125911–A, 125912–A, 125915–A, and 125916–A, therefore, we are of opinion that the trial court erred in ruling that the stipulation should be a part of the record because the issue in the incorporated record is not the same as that in those cases. As to said cases, the decision of the trial court is reversed and the cases are remanded for a new trial in which trial the stipulation should be eliminated insofar as it refers to those cross-appeals.

In all of the other cases covered by this record, the position of the Government was not prejudiced by the inclusion of the stipulation in the record incorporated. In the case of *Zucca* v. *United States*, 10 Ct. Cust. Appls. 133, T. D. 38399, the evidence introduced contained an indictment in a criminal case against the owner of an importing firm and a judgment of acquittal in that case. The court, nevertheless, examined the whole record in the case.

In taking an exception to the ruling of the court on the admission of the whole record in reappraisement 124452–A, etc., in the record in the instant cases, counsel for the Government stated that the inclusion of the stipulation in the record "deprived the Government of its right to prove that there was no export value," but he made no attempt to prove an absence of export value except by the cross-examination of witnesses Duhrssen and Pickin when reappraisements 125353–A, etc., and 126083–A, etc., were separately called for trial on February 27, 1941. In fact, the evidence of those witnesses establishes that there *was* an export value. They testified that the manufacturers sent them sketches, paintings, and proofs of decalcomanias representing the goods offered for sale; that they were not the exclusive agents of the manufacturers but that sales were made by the manufacturers to other importers in the United States; that the manufacturers placed no restrictions upon them as to whom they should sell or as to the resale prices; that the prices were determined on the basis of the number of colors in the decalcomanias and the quantity of the orders and they paid the prices shown on the invoices; and that 2,000 sheets were the usual wholesale quantities for export sales to the United States. Exhibits A–1, A–2, and A–3 in the record incorporated show the location of the principal markets for the goods in Germany. Counsel for the Government did not attempt to controvert this testimony but confined his evidence on defense to an attempt to show that the imported duplex decalcomanias were similar to the German simplex by testimony showing that both kinds had been used in the United States on chinaware and vitrified overglazed dinnerware which is

baked or fired at higher temperatures than earthenware. Many of these instances recited in the testimony were mere experiments.

The issue joined in these cases, with the exception of those in which the collector filed cross-appeals, is the same as that in reappraisements 124452–A, etc., the record in which case was incorporated herein. Under rule 23 of the court, as amended on January 29, 1941 (T. D. 50336), and rule 25, the trial judge is authorized to exercise his discretion in the admission in evidence of the record in a previous case on the same issue. Such rules have been held to be reasonable in character and have the force and effect of law. *United States* v. *M. Minkus*, 16 Ct. Cust. Appls. 263, T. D. 42869; *United States* v. *Bosca, Reed, MacKinnon Co. et al.*, 24 C. C. P. A. (Customs) 364, T. D. 48829, affirmed on rehearing in 25 C. C. P. A. (Customs) 42, T. D. 49040. We are of opinion that the trial court committed no error in admitting the complete record in the incorporated case in all the reappraisements except those covering cross-appeals by the collector.

In any event, the record proves all the elements necessary to establish export value and that there was an absence of foreign value. Therefore, if the stipulation referred to is disregarded, the evidence is sufficient to support the appellees' claim. As to all of the cases, except reappraisements 125353–A, 125355–A, 125575–A, 125577–A, 125584–A, 125585–A, 125587–A, 125910–A, 125911–A, 125912–A, 125915–A, and 125916–A heretofore referred to, we make the same findings of fact as are contained in the decision of the trial court and affirm the decision below.

Judgment will be entered accordingly.